IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SUZANNE DONNELLY, | * |
| Plaintiff, | * |
| | Civil Action No. RDB-17-1486 |
| v. | * |
| RAQUEL ROSAS, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Suzanne Donnelly ("Plaintiff" or "Donnelly") brings this action against Defendant Raquel Rosas ("Defendant" or "Rosas"), who Donnelly alleges she sought treatment from for Lyme Disease for over two years after Rosas told her that she had experience treating tick-borne illness patients and was a "medical professional, licensed and trained as an effective healer." (Am. Compl., ECF No. 5.) Despite the representations, Rosas was not licensed and Donnelly alleges that the treatment ultimately caused selenium toxicity. Currently pending before this Court is Defendant's Motion to Dismiss. (ECF No. 20.) The submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). This Court's jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. For the following reasons, Defendant's Motion to Dismiss (ECF No. 20) is GRANTED IN PART and DENIED IN PART. Specifically, Defendant's Motion is GRANTED as to Plaintiff's intentional tort (Count IV) and breach of contract (Count V) claims and Counts IV and V are DISMISSED. In all other respects, Defendant's Motion is DENIED and Plaintiff proceeds with her claims for violation of the Maryland Consumer Protection Act,

Md. Code Ann., Com. Law § 13-101 *et seq.* (Count I), fraudulent inducement and common law fraud (Count II), negligent misrepresentation (Count III), and for special and consequential damages.

**BACKGROUND**

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). In September of 2011, Plaintiff Suzanne Donnelly contracted Lyme Disease. (Am. Compl., ECF No. 5 at ¶ 6.) After conventional treatments did not alieve her symptoms, on March 17, 2012 she began seeing Defendant Raquel Rosas who "represented that she had extensive knowledge, specialized training, and experience treating tick-borne illness patients" and "was a knowledgeable, skilled and effective medical professional, licensed and trained as an effective healer." (*Id.* at ¶¶ 7, 10, 14.) Rosas then told Donnelly that one year of her treatment program would "fully cure [Donnelly's] tick-borne illness and resolve all associated or underlying conditions and symptoms." (*Id.* at ¶ 10.) Relying on Rosas's statements, Donnelly began receiving "treatment, services, advice, prescriptions, consumer products manufactured by Defendant, other consumer products, goods, and diagnoses from Defendant . . . and referrals to others that provided goods or services." (*Id.* at ¶ 8.) About a month or two into treatment, Rosas told Donnelly that it would in fact take two years of treatment in order for her to be fully healed. (*Id.* at ¶ 32.)

The treatments occurred at Rosas's Maryland home office and included, among other

things, ionized foot baths, detox baths, exposure to heat and "healing lights," acupuncture, and body wraps. (*Id.* at ¶¶ 11, 17, 30, 40.) Donnelly initially received treatments two to four times a week. (*Id.* at ¶ 11.) In February of 2014, however, she moved out of Maryland and began receiving treatment once every two weeks for a few days at a time.[1] (*Id.* at ¶¶ 11-12.) In addition to the in-person treatments, Donnelly asserts that Rosas recommended various pills, herbs, vitamins, oils, creams, and other store products. (*Id.* at ¶¶ 18-20.) Further, Donnelly alleges that Rosas requested that she provide regular updates of her symptoms and hair, urine, and saliva samples. (*Id.* at ¶¶ 25, 27.) Rosas also increased the frequency of Donnelly's treatments, supplements, and referrals, "substantially increasing the time, cost, and physical burden of Plaintiff's treatment." (*Id.* at ¶ 24.) Donnelly alleges that during each visit, Rosas "continued to represent and promise Plaintiff that in return for payments, Defendant would, through her Treatments, Products, Store Products, and Referrals, fully and completely cure Plaintiff and eliminate her symptoms . . . Plaintiff relied upon these representations in continuing prescribed treatments and paying for same." (*Id.* at ¶ 15.)

Despite undergoing Rosas's treatments, using the various products, and taking the various supplements, Donnelly alleges that her Lyme Disease symptoms increased. (*Id.* at ¶ 35.) Nevertheless, Rosas "consistently and falsely reassured and represented to Plaintiff that new and worsening symptoms were an expected result of Defendant's treatment and Plaintiff's recovery and would be resolved with additional treatments as long as Plaintiff continued to comply with Defendant's advice in full." (*Id.*) Further, to explain the symptoms, Plaintiff alleges that Rosas falsely diagnosed her with various medical conditions,

---

[1] Later in the Amended Complaint, Plaintiff alleges that with Defendant's additional referrals for other treatments, at one point she was in treatment "an average of six days a week." (ECF No. 5 at ¶ 30.)

3

including "Rickettsia" and "Erhlichia." (*Id.* at ¶ 38.) Throughout her treatment with Rosas, Donnelly "believed and relied upon the representations, misrepresentations and omissions of Defendant and paid Defendant substantial sums for Treatment and Products, and, at Defendants direction, paid for Referrals and prescribed consumer products." (*Id.* at ¶ 44.)

On or around June 11, 2014, however, Plaintiff, enduring "new and worsening symptoms that were extremely debilitating," visited a physician. (*Id.* at ¶ 50.) The physician told Plaintiff that none of her known medical conditions explained her worsening symptoms, and that the products she had been taking amounted to "toxic dosages of supplements." (*Id.* at ¶ 52.) Specifically, the physician suspected selenium toxicity from toxic dosages of supplements prescribed to Donnelly by Rosas. (*Id.* at ¶¶ 52-53.) Plaintiff therefore stopped all treatment with Defendant on June 22, 2014. (*Id.* at ¶ 63.) On or around July 9, 2014, Plaintiff was conclusively diagnosed with selenium toxicity. (*Id.* at ¶ 64.) In late 2015, Plaintiff also learned for the first time from a third party that despite Rosas's representations, she may not have been professionally licensed in any capacity. (*Id.* at ¶ 70.)

On May 31, 2017, Plaintiff Donnelly initiated this action against Defendant Rosas. (Compl., ECF No. 1.) Donnelly alleges that despite Rosas's representations to her during their first meeting and throughout her treatment, Rosas is not licensed as an effective healer, has no specialized tick-borne illness medical training or expertise, and did not have the requisite medical knowledge or training to treat and cure Plaintiff. (*Id.* at ¶ 16.) Further, Donnelly asserts that Rosas knew she was falsely recommending the treatments and products, diagnosing Donnelly with medical conditions, and representing that her treatment program would fully cure Donnelly. From these allegations, Donnelly asserts claims for

4

violations of the Maryland Consumer Protection Act, fraudulent inducement and common law fraud, negligent misrepresentation, assault and battery, and breach of contract. (Am. Compl., ECF No. 5.) She seeks compensatory, special and consequential, and punitive damages in addition to attorney fees and costs. (*Id.*) She asserts that she continues to suffer from permanent effects of selenium poisoning. (*Id.* at ¶ 64.)

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) "require that complaints in civil actions be alleged with greater specificity than previously was required." While a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Iqbal*, 556 U.S. at 678.

Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud be stated with particularity." Fed. R. Civ. P. 9(b). The rule "does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists." *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1074 (D. Md. 1991). To satisfy the rule, a plaintiff must "identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007). As the United

States Court of Appeals for the Fourth Circuit stated in *United States ex rel. Nathan v. Takeda Pharmaceuticals North America, Inc.*, 707 F.3d 451 (4th Cir. 2013), the aims of Rule 9(b) are to provide notice to defendants of their alleged misconduct, prevent frivolous suits, eliminate fraud actions where all the facts are learned after discovery, and protect defendants from harm to their goodwill and reputation. 707 F.3d at 456 (citation omitted).

**ANALYSIS**

Plaintiff Donnelly brings claims in this Court based on diversity jurisdiction under 28 U.S.C. § 1332 for (1) violations of the Maryland Consumer Protection Act, (2) fraudulent inducement and common law fraud, (3) negligent misrepresentation, (4) assault and battery, and (5) breach of contract.[2] Defendant moves to dismiss the Amended Complaint on the ground that Plaintiff has failed to state a claim for each cause of action. Further, Defendant argues that Plaintiff's claims for special or consequential damages must be stricken, in addition to Plaintiff's claims for attorney's fees and punitive damages in relation to her breach of contract claim. This Court addresses each claim in turn below.[3]

**A. Maryland Consumer Protection Act (Count I)**

The Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101 *et seq.*, prohibits "unfair or deceptive trade practices." § 13-301. The MCPA was enacted in response to "mounting concerns over the increase of deceptive practices in

---

[2] The parties do not dispute that Maryland law applies to Plaintiff's state law claims.
[3] Defendant's Motion also argues that the Amended Complaint should be dismissed for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5). On November 1, 2017, this Court granted Plaintiff's Motion for Extension of Time to Serve the Amended Complaint after "having considered the memoranda, affidavits and papers submitted in support of and the opposition thereto, and for good cause shown." (ECF No. 15.) This Court granted Plaintiff until December 15, 2017, to serve Defendant and the summons was returned executed on November 27, 2017. (ECF Nos. 15, 19.) Accordingly, this ground for dismissal is DENIED.

connection with the sales of merchandise, real property, and services and the extension of credit." *Id.* at § 102(a)(1). As the Court of Special Appeals for Maryland explained in *Hogan v. Maryland State Dental Association*, 155 Md. App. 556, 563, 843 A.2d 902 (Md. Ct. Spec. App. 2004), "[t]he Act allows consumers to recover from persons who engage in deceptive trade practices related to the sale or offering for sale of consumer goods, consumer realty, or consumer services; the extension of consumer credit; or the collection of consumer debts." 155 Md. App. at 563 (citing § 13–303; *Consumer Protection Div. v. Outdoor World Corp.,* 91 Md. App. 275, 288, 603 A.2d 1376 (1992)). The MCPA also expressly exempts various types of professionals including medical professionals. § 13-101(g), 101(d), 104(1). "[C]ourts in this District have construed the exemption broadly, holding that covered professionals may be exempt from MCPA liability 'even when they are not acting within their specific professional capacity.'" *Hawkins v. Kilberg*, 165 F. Supp. 3d 386, 390 (D. Md. 2016) (quoting *Pruitt v. Alba Law Grp., P.A.*, No. DKC-15-0458, 2015 WL 5032014, at *10 (D. Md. Aug. 24, 2015)). Because an MCPA claim sounds in fraud, it must be plead with particularity. *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013); *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013).

Defendant argues that Plaintiff's claims arise from Defendant Rosas's treatment of Plaintiff Donnelly in her role as a "medical healer" and accordingly falls within this exception to the MCPA. (ECF No. 21 (citing ECF No. 5 at ¶ 75).) It is undisputed, however, that Defendant Rosas is not a licensed physician or licensed with any Maryland agency.[4] (ECF No. 23 at 3.) *See Scull v. Groover, Christie & Merritt, P.C.*, 435 Md. 112, 76 A.3d 1186

---

[4] Defendant asserts that Rosas is not licensed because Maryland does not require practicing "Naturopaths" to be licensed. (ECF No. 23 at 3.)

(Md. 2013) (discussing in the context of "professional services" exceptions in Maryland law that "[p]rofessionals are generally licensed on the basis of specialized training, experience, and demonstrated competence . . . Their conduct in providing such services is generally regulated by specialized boards").

Further, construing the Amended Complaint in the light most favorable to the Plaintiff, Donnelly asserts not only that she received treatment from Rosas, but also that Rosas sold her consumer products. The Amended Complaint alleges that "[a]t all times relevant, Plaintiff was a consumer seeking consumer goods and services, engaging in consumer transactions, and was not seeking goods or services in trade or business." (ECF No. 5 at ¶ 73.) Donnelly further alleges that "Defendant falsely and deceitfully represented to Plaintiff that Defendant self-manufactured or possessed goods and products that included pills, pellets, tinctures, herbs, enzymes, amino acids, vitamins, homepathics, oils, creams, and other substances that were essential to cure and would in fact cure Plaintiff." (*Id.* at ¶ 18.) Donnelly alleges that Rosas "prescribed and sold" the products to her despite knowing that they were of no medical value to her and potentially harmful. (*Id.* at ¶ 19.) *See Pease v. Abbott Laboratories, Inc.*, No. JKB-12-1844, 2013 WL 174478, at *2 (D. Md. Jan. 16, 2013) ("[T]he [prescription] used by [the plaintiff] was selected by her physician and prescribed for her, *not as a consumer good*, but as part of her course of medical treatment.") (emphasis added). Therefore, Defendant's Motion is DENIED as to Plaintiff's MCPA claim (Count I).

## B. Fraudulent inducement and common law fraud (Count II)

Under Maryland law, to state a claim for common law fraud or fraudulent inducement, a party must show:

8

> (1) that the defendant made a false representation to the plaintiff (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Todd v. XOOM Energy Maryland, LLC*, No. GJH-15-0154, 2017 WL 667198, at *5 (D. Md. Feb. 16, 2017) (quoting *Legore v. OneWest Bank, FSB,* 898 F. Supp. 2d 912, 919 (D. Md. 2012))); *see also Airport Square Holdings, LLC v. GCCFC 2007-GG9 Colomary Facilities, LLC*, No. JFM-16-02883, 2017 WL 639230, at *6 (D. Md. Feb. 16, 2017) (reciting the same five elements for fraudulent inducement (citing *Lawley v. Northam*, No. ELH-10-1074, 2011 WL 6013279, at *9 (D. Md. Dec. 1, 2011))). Because these claims also sound in fraud, they must be pled with particularity. *Spaulding*, 714 F.3d at 781. Therefore, Plaintiff "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.,* 612 F.3d 724, 731 (4th Cir. 2010) (citation omitted).

Rosas asserts that "Plaintiff has not adequately alleged the time or place of the misrepresentation, who made it, and what that person or entity gained thereby." (ECF No. 21 at 13.) Plaintiff, however, alleges that during the two years she received treatment at Rosas's homes, Defendant asserted that various products and treatments would heal her in order to entice her to continue treatment and buy the various products from Defendant. Further, Donnelly alleges that Rosas never told her that the treatments or products were "ineffective, dangerous, [or] even life threatening." (ECF No. 5 at ¶ 58.) Holding herself out as a licensed and experienced medical healer, Plaintiff had the right to rely on her assertions.

9

Finally, Plaintiff has clearly alleged that she suffered injuries from following Defendant's treatments and taking the products given that she was alleges that she was subsequently diagnosed with selenium toxicity from which she continues to suffer side effects. (ECF No. 5 at ¶ 64.) Therefore, the Amended Complaint meets Rule 9(b)'s purposes of notifying Rosas of the alleged misconduct and preventing fraud actions where all the facts are learned after discovery. *Takeda Pharmaceuticals*, 707 F.3d at 456.

Defendant also argues that Plaintiff's claims are barred by the applicable three-year statute of limitations. Plaintiff filed her Complaint on May 31, 2017.[5] Under Maryland law, the statute of limitations for a fraud claim is three years unless otherwise specified. Md. Code Ann., Cts. and Jud. Proc. § 5-101. To determine when the three years begins, Maryland recognizes the "discovery rule" which holds that "a cause of action accrues when a plaintiff in fact knows or reasonably should know of the wrong." *Duffy v. CBS Corporation*, 458 Md. 206, 231, 182 A.3d 166 (Md. 2018) (quoting *Georgia-Pacific Corp. v. Benjamin*, 394 Md. 59, 74-76, 904 A.2d 511, 520-21 (2006)). Although Plaintiff knew that her symptoms were worsening during her treatment, she relied on Rosas's representations that other "various medical conditions" were causing the symptoms. (ECF No. 5 at ¶ 38.) Donnelly kept returning to Rosas and buying the various products based on her representations that the treatment "has started processes in Plaintiff's body that had to be fully resolved by Defendant's continuing Treatments." (*Id.* at ¶ 36.) Further, Plaintiff did not know that the

---

[5] Although Plaintiff subsequently filed the operative Amended Complaint (ECF No. 5) on July 14, 2017, Federal Rule of Civil Procedure 15 permits an amendment to "relate[] back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of that conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" Fed. R. Civ. P. 15(c). Because Plaintiff's Amended Complaint arises out of the same conduct as the Original Complaint, the three-year statute of limitations runs from the date of the Original Complaint, May 31, 2017.

10

products she had been taking amounted to "toxic dosages of supplements" until she visited a new physician on or around June 11, 2014. (ECF No. 5 at ¶¶ 50-52.) Finally, Plaintiff asserts that she did not know that Rosas's alleged assertion that she was licensed might have been false until late 2015. (*Id.* at ¶ 70.) Therefore, Defendant's Motion to Dismiss Plaintiff's fraud-based claims (Count II) is DENIED.

### C. Negligent misrepresentation (Count III)

To state a claim for negligent misrepresentation, a plaintiff must show that:

(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Lloyd v. General Motors Corp.*, 397 Md. 108, 136, 916 A.2d 257 (Md. 2007). As the Court of Appeals for Maryland stated in *Premium of America, LLC v. Sanchez*, 213 Md. App. 91, 73 A.3d 343 (Md. Ct. Spec. App. 2013) "the determination of whether a duty exists represents a policy question of whether the specific plaintiff is entitled to protection from the acts of the defendant." 213 Md. App. at 108 (citations omitted). "Importantly, a claim of negligent misrepresentation under Maryland law does not contain an essential showing of fraud and thus the heightened pleading requirements of Rule 9(b) do not apply."[6] *Baltimore Cty. v. Cigna Healthcare*, No. 06-1877, 238 F. App'x 914, 921 (4th Cir. June 5, 2007) (citing *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007); *Gen. Elec. Capital*

---

[6] Defendant cites *Topshelf Mgt., Inc. v. Campbell-Ewalk Co.*, 117 F. Supp. 3d 722 (M.D.N.C.) for the proposition that "[c]ourt[s] in the Fourth Circuit have affirmatively held that the higher level pleading requirements for fraud claims also apply to claims of 'negligent misrepresentation.'" (ECF No. 21 at 14.) *Topshelf*, however, discussed federal courts' determinations "that the *North Carolina* tort of negligent misrepresentation sounds in fraud." 117 F. Supp. 3d at 727 (emphasis added).

11

*Corp. v. Posey*, 415 F.3d 391, 395-96 (5th Cir. 2005)); *see also Malinowski v. The Lichter Group, LLC*, 165 F. Supp. 3d 328, 338 (D. Md. 2016) (not applying a heightened standard to the plaintiff's negligent misrepresentation claim).

Defendant argues that Plaintiff has not adequately pled a claim for negligent misrepresentation because she has not identified any misrepresentations and the contractual relationship between Rosas and Donnelly did not create a fiduciary relationship. For the reasons explained above, Plaintiff has adequately alleged that during the years she received treatment, Defendant asserted that various products and treatments would heal Plaintiff in order to entice her to continue treatment and buy the various products Defendant indicated were necessary to her recovery. Ultimately, however, she was diagnosed with selenium toxicity from ingesting toxic dosages of selenium. As to the parties' relationship, Defendant refers to herself as a "health care provider" and Plaintiff alleges that Rosas held herself out as a "licensed and trained as an effective healer."[7] (ECF No. 5 at ¶ 14.) Finally, for the same reasons as explained above, although Plaintiff's negligent misrepresentation claim is subject to a three-year statute of limitations,[8] that limitations period did not begin running before May 31, 2014. Therefore, Plaintiff has pled a claim for negligent misrepresentation and Defendant's Motion is DENIED as to this claim.

### D. Intentional torts (Count IV)

Count IV of the Amended Complaint brings a claim for "intentional torts." (ECF No. 5 at ¶¶ 88-93.) Plaintiff alleges Rosas "assaulted and battered" her by performing

---

[7] This Court notes that in the context of the MCPA claim, Defendant chooses to characterize herself as a "medical healer providing health care and health care products." (ECF No. 21 at 12.)
[8] *See Smallwood v. Nationstar Mortg., LLC*, No. PX-16-4008, 2017 WL 6527251, at *8 (D. Md. Dec. 21, 2017) ("Any action for negligent misrepresentation must be filed within three years from the date of accrual.").

treatments on her that she knew could harm, and did in fact harm, Donnelly.[9] (*Id.* at ¶ 91.) Under Maryland law, "battery is a harmful or offensive contact with a person resulting from an act intended to cause the person such contact." *Northfield Ins. Co. v. Boxley*, 215 F. Supp. 2d 656, 661 (D. Md. 2002) (citing *Saba v. Darlings*, 320 Md. 45, 575 A.2d 1240, 1242 (1990)). Similarly, assault is "an intentional threat, either by words or acts, to physically harm another person without that person's consent." *First Financial Ins. Co. v. GLM, Inc.*, 88 F. Supp. 2d 425, 429 (D. Md. 2000). Defendant Rosas argues that Donnelly only alleges consensual physical touching because she voluntary traveled to Defendant to receive the treatments and "agreed to the terms and conditions of such treatment." (ECF No. 21 at 15-16.) Therefore, Rosas argues that Donnelly's claims for assault and battery fail as a matter of law because the treatments were neither "harmful" nor "offensive." In response, Donnelly asserts that she did not give informed consent to the treatments due to Rosas's alleged misrepresentations. (ECF No. 22 at 13.)

First, under Maryland's three year statute of limitations,[10] no treatments performed prior to May 31, 2014 could form the basis of Plaintiff's assault or battery claims. Plaintiff asserts that she fully ceased all treatment with Rosas on June 22, 2014, but does not plead what treatments, if any, occurred after May 31, 2014. Second, Donnelly's argument regarding consent goes to her negligent and fraudulent misrepresentation claims and does not transform the two years of voluntary treatment into claims for assault or battery. Donnelly repeatedly returned to Rosas and allowed her to perform detox baths, acupuncture, and

---

[9] The Amended Complaint in fact states that "Plaintiff assaulted and battered Plaintiff." (ECF No. 5 at ¶ 91.) This Court assumes that Plaintiff meant "Defendant assaulted and battered Plaintiff."
[10] *See Sanders v. Callender*, No. DKC-17-1721, 2018 WL 337756 (D. Md. Jan. 9, 2018) (explaining that Maryland's statute of limitations for assault and battery is three years).

13

other treatments. Accordingly, she knew what treatments were being performed and that Donnelly was performing them. *See Janelsins v. Button*, 102 Md. App. 30, 37, 648 A.2d 1039 (1994) ("Consent occurs when a plaintiff 'manifests a willingness that the defendant engage in conduct and the defendant acts in response to such a manifestation.'" (quoting *W. Page Keeton, et al., Prosser & Keeton on the Law of Torts,* § 18, at 113 (5th ed., 1984))). Therefore, Donnelly has not plead a claim for "intentional torts" and Defendant's Motion to Dismiss is GRANTED as to Count IV.[11]

### E. Breach of contract (Count V)

Donnelly also brings a claim against Rosas for breach of contract. Specifically, she alleges that "each time Plaintiff visited Defendant," Defendant made representations and warranted that the goods and services would "address and cure Plaintiff's diseases, eliminate her symptoms, and fully restore Plaintiff's health," and Rosas materially breached those agreements and representations. (ECF No. 5 at ¶¶ 97-99.) In her Response to the Motion to Dismiss, Plaintiff clarifies that she is alleging a "continuing nature of the contractual relationship." (ECF No. 22 at 14.) Specifically, "at each visit[,] the continuing promises were 'refreshed and renewed.' . . . The contract is thus based ongoing false assertions and promises." (*Id.*)

"To establish that a binding contract was made, a plaintiff must adduce evidence of an offer and acceptance, and of a meeting of the minds as to the essential terms of the contract." *ABT Associates, Inc. v. JHPIEGO Corp.*, No. 00-2026, 9 F. App'x 172, (4th Cir. May

---

[11] In Plaintiff's Response to the Motion to Dismiss, she asserts that Count IV of the Amended Complaint also encompasses breach of fiduciary duty, intentional infliction of emotional distress, and malicious misrepresentation. (ECF No. 22.) Nowhere in the Amended Complaint, however, does Plaintiff reference these causes of actions.

14

17, 2001) (citing *Safeway Stores, Inc. v. Altman*, 296 Md. 486, 463 A.2d 829, 831 (Md. 1983)). As the Court of Appeals for Maryland noted in *Dingle v. Belin*, 358 Md. 354, 749 A.2d 157 (Md. 2000), "[a]ctions for breach of contract have been founded on a variety of alleged promises and commitments. Most have alleged a promise to cure, or to cure within a certain period of time, or of some other particular result." 358 Md. at 373, 749 A.2d 157 (collecting cases); *see also Robins v. Finestone*, 308 N.Y. 543, 546, 127 N.E.2d 330 (1955) ("[A] doctor and his patient are at liberty to contract for a particular result and, if that result be not attained, a cause of action for breach of contract results which is entirely separate from one for malpractice although both may arise from the same transaction.").

Like the fraudulent inducement claim, Defendant asserts that Maryland's three-year statute of limitations bars Plaintiff's breach of contract claim. Md. Code Ann., Cts. and Jud. Proc. § 5-101. *Unlike* Plaintiff's fraud and negligent misrepresentation claims, the statute of limitations does in fact bar Plaintiff's breach of contract claim. This is because Plaintiff's breach of contract claim is based on Rosas's promise to cure Plaintiff at the latest *within two years*. (ECF No. 5 at ¶¶ 10, 32.) This time period began to run during Plaintiff's first visit with Rosas, which was on March 17, 2012, and accordingly ended March 18, 2014. It is clear from the Amended Complaint that Donnelly knew on March 18, 2014 that she was not cured. *See* ECF No. 5 at ¶ 50 ("On or about June 11, 2014, Plaintiff sought medical treatment from a physician for new and worsening symptoms that were extremely debilitating."). Therefore, the three-year statute of limitations began to run on March 18, 2014 and Plaintiff did not file her claim until May 31, 2017. Accordingly, Plaintiff's claim is barred by Maryland's statute of limitations and Defendant's Motion is GRANTED as to

Plaintiff's breach of contract claim (Count V).

### F. Damages and attorney's fees claims

Finally, for each of Donnelly's claims she seeks compensatory damages in excess of $75,000, special and consequential damages, punitive damages, and attorney's fees and costs. Rosas argues that the Amended Complaint "wholly fail[s] to allege any special or consequential damages and such demand should be stricken."[12] (ECF No. 21 at 18.) Special, or consequential, damages are those that are "unusual for the type of claim in question—that are not the natural damages associated with such a claim." *Carnell Const. Corp. v. Danville Redevelopment & Housing Authority*, 745 F.3d 703, 725 (4th Cir. 2014) (internal quotations and citation omitted); *see also Hoang v. Hewitt Ave. Assocs., LLC*, 177 Md. App. 562, 595, 936 A.2d 915 (2007). Defendant Rosas simply concludes in her Motion to Dismiss that "Plaintiff wholly failed to allege any special or consequential damages and such demand should be stricken." (ECF No. 21 at 18.) She does not identify any particular grounds for why, at this stage in the proceedings, Donnelly's claims for special or consequential damages should be stricken. Therefore, Defendant's Motion is DENIED as to Plaintiff's claims for special and consequential damages.

### CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 20) is GRANTED IN PART and DENIED IN PART. Specifically, Defendant's Motion is GRANTED as to Plaintiff's tort (Count IV) and breach of contract (Count V) claims and Counts IV and V are DISMISSED. In all other respects, Defendant's Motion is DENIED

---

[12] Defendant also argues that punitive damages and attorney's fees are unavailable in a breach of contract claim. Because this Court dismisses Plaintiff's breach of contract claim, this argument is moot.

and Plaintiff proceeds with her claims for violation of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101 *et seq.* (Count I), fraudulent inducement and common law fraud (Count II), negligent misrepresentation (Count III), and for special and consequential damages.

A separate order follows.


Dated: August 14, 2018                                              /s/

                                                                Richard D. Bennett
                                                                United States District Judge